**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**vs.** **CASE NO. 4:01CR47-SPM/AK**

**CHRISTOPHER BROWN,**

**Defendant.**

**_____________________________/**

# REPORT AND RECOMMENDATION

This cause is before the Court on the motion of Defendant Christopher Brown to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Doc. 117. The Government has responded to the motion, Doc. 135, and Defendant has filed a reply. Doc. 138. Subsequently, Defendant filed a document styled as an "Amended 2255 Motion," which, because of the posture of the case, the Court construed as a motion for leave to amend. Doc. 142. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

**BACKGROUND**

Defendant Brown was indicted in all seven counts of a seven-count indictment. In Count One, he was a co-defendant with Robert Hall and Willie Francis; in Count Seven, he was a co-defendant with Hall, and in Counts Two and Five, he was a co-defendant with Francis. Doc. 1. On November 1, 2001, Defendant and the Government entered into a Plea and Cooperation Agreement. Doc. 45. In that document, Defendant acknowledged that "absent a substantial assistance motion, the statutory provisions require a life sentence." *Id*. at 3. Defendant also "specifically waive[d] any Fifth Amendment privilege and any other privilege inconsistent with the cooperation required by this agreement." *Id*. The agreement concluded with Defendant's acknowledgment that no other agreements between the parties existed and that Defendant entered "this agreement knowingly, voluntarily, and upon advice of counsel." *Id*. at 6.

On November 7, 2001, Defendant appeared before the magistrate judge and pled guilty to Count One. Docs. 44-47. During the course of questioning, the magistrate judge specifically directed Defendant's attention to the Statement of Facts:

THE COURT: [D]o you understand that what you are saying–and I'm drawing your attention to the middle of paragraph 6 of page 2–that you stated that [Hall] was one of your primary suppliers, and he had given you about two ounces of crack cocaine each week for a year.

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Do you agree that the government could present evidence of that at a trial?

THE DEFENDANT: Yes, sir.

THE COURT: That calculates to about 2.9 kilograms of crack cocaine. Do you understand that that's what you are saying when you agree that they can produce evidence of that?

THE DEFENDANT: Yes, sir.

THE COURT: Did you in fact do what the government says you did on this statement of facts? Do you wish to contest that at sentencing?

MR. SELIGER: As I understand it, Judge, these are confidential informant buys that were recorded.

THE COURT: Did you have plans to contest it?

MR. SELIGER: No, sir, we did not.

THE COURT: Then I will persist in my question....[D]o you in fact admit that the statement of facts [is] true, that you did the things that are set forth in that statement of facts?

THE DEFENDANT: Yes, sir.

Doc. 131 at 22-23; *see also* Doc. 44.

The Court then explained the sentence which Defendant faced: "Your counsel has...explained that the maximum sentence that may be imposed upon acceptance of a guilty plea of Count One is life imprisonment, and that the hard fact is that that's the only sentence that Judge Mickle can impose unless there is a substantial assistance motion." Doc. 131 at 23. Defendant acknowledged his understanding of this fact. *Id*. The Court next explained the application of the Sentencing Guidelines:

THE COURT: [I]f the government files a motion that allows Judge Mickle to go below the minimum mandatory life sentence, then you go from that situation to a situation where now your sentence is going to be determined by the sentencing guidelines. Do you understand?

    THE DEFENDANT: I understand.

THE COURT: Okay. Now, the guidelines will go through your criminal history and the amount of drugs that are involved and a few other factors, but those are the big important ones, and will come up with a range of sentences that Judge Mickle can impose all the way from the top of the range of the worst case, all the way to a bottom of the range; and, that Judge Mickle is going to have to sentence you within that range, unless there is a substantial assistance motion. Do you understand that?

THE DEFENDANT: I understand.

THE COURT: Now, do you understand that he also can go above the range in very limited circumstances....[I]f there is a substantial assistance motion, he can go below the minimum. He could come down below the bottom of the range. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: But do you understand that unless there is a motion filed by the government, that he must sentence you to life imprisonment? He doesn't have any choice.

THE DEFENDANT: Yes, sir.

*Id*. at 25-26.

The Court then reviewed selected portions of the Plea and Cooperation Agreement with Defendant:

THE COURT: In the plea agreement, there are some very hard portions of it, hard from your perspective, and I just want to be sure that you have it in front of you and know that they are there. First, that you agree that you have been convicted of two or more offenses...In other words, you are agreeing that you are facing a minimum mandatory life sentence because there were two or more qualifying convictions. Is that true?

THE DEFENDANT: Yes, sir.

* * *

THE COURT: Do you understand that the government's decision about whether to file the substantial assistance motion is theirs to make, and that Judge Mickle doesn't have any way to force them to file it if they decide that you have not provided substantial assistance?

THE DEFENDANT: I understand.

THE COURT: So, you understand that you are completely at their mercy? You give them whatever you have got, and then that's it. There is nothing more you can do to get them to file it.

THE DEFENDANT: Yes, sir. I understand.

THE COURT: Tell me in you own words what the substantial assistance motion would do for you, if you were able to get one. What are you expecting out of that?

THE DEFENDANT: Not life.

THE COURT: That you would get out of a life sentence?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And that you would get some sentence that would be less than that?

THE DEFENDANT: Yes, sir.

*Id*. at 28-30.

Finally, the Court explored the voluntariness of Defendant's plea:

THE COURT: Has there been any promise made to you by anyone who you think represents the government–law enforcement agent or [the Assistant United States Attorney], or anyone like that, or even Mr. Seliger–telling you what the government told him that

is not in this written plea agreement? Is there anything that's been promised to you that we don't have in this written document?

THE DEFENDANT: No, sir.

THE COURT: So everything you are counting on is in the written agreement. Is that right?

THE DEFENDANT: That's it.

THE COURT: So there is no secret thing that you are counting on that you haven't told even your lawyer about?

THE DEFENDANT: No, sir.

THE COURT: Has anyone threatened you with force or reward or anything like that to force you to plead guilty?

THE DEFENDANT: No, sir.

* * *

THE COURT: Mr. Seliger, can you assure the Court that there have been no promises made to [Defendant] other than what is in the written plea agreement?

MR. SELIGER: Yes, sir, I can.

THE COURT: And Mr. Simpson?

MR. SIMPSON: Yes, sir. The whole deal is in the written plea agreement.

*Id*. at 30-32.

After Defendant testified against Hall, the Court accepted the guilty plea. Doc. 64. A few days before sentencing, the Government filed a motion concerning substantial assistance pursuant to 18 U.S.C. § 3553(e) to "relieve defendant from the statutory mandatory penalties and to leave him subject to the Sentencing Guidelines."

Doc. 78. Without substantial assistance consideration, Defendant was facing a mandatory life sentence, as more previously explained. In particular, the Government noted Defendant's "readily admitted involvement in the offenses charged," his testimony at Hall's trial, and his assitance in "establishing the relevant conduct for which Hall should be sentenced." *Id*. at 2. The Government concluded:

> The government does not excuse or condone defendant's repeated and continual involvement in criminal activities. Defendant is a career offender [and] sold drugs continuously for thirteen years....
> The government would not have used defendant as a witness, nor filed this motion, if he had not cooperated immediately and consistently and with significant results, or if he would not still be facing substantial penalties. While this motion permits the Court to sentence below the otherwise mandatory life term, the government makes no recommendation that any particular sentence be imposed, or than any leniency be granted. This matter lies within the sound discretion of the Court.

*Id*. at 2-3.

On February 11, 2002, Defendant appeared for sentencing. At that time, he personally addressed the Court, stating:

> Coming into the situation...I understand that I pled guilty to Count 1, guilty on conspiracy, but I also feel like I put my life, risked my life on the line when they upper-handed me. They asked me did I want to help, continue on by helping myself, by cooperating, which I did. And I just feel like...I'm still in the blind because I still don't really know what I'm fixing to get. Ain't nobody telling me nothing.

Doc. 124 at 12.

After considering the matter, the Court sentenced Defendant to 360 months imprisonment. Docs. 81 & 86. In sentencing Defendant below the statutory mandatory life sentence and at the low end of the Guidelines range, the Court found:

> Pursuant to the Sentencing Reform Act of 1984 and all amendments, it is the judgment of this court that you, Christopher Brown, are hereby

> sentenced to a term of 360 months. This sentence is imposed below the mandatory life sentence you were facing by statute because the government has filed a 3553(e) substantial assistance motion on your behalf. Your cooperation was timely rendered, significant, and useful to the government in the prosecution and investigation of others.
>
> Prior to the filing of this motion, I would have been required to sentence you to life in prison. The 360 months I now impose is sufficient to provide just punishment to you for your criminal conduct and will serve as a general deterrent to others.

Doc. 124 at 14. Defendant did not appeal his sentence.

The instant motion to vacate ensued. On this occasion, Defendant raises one ground for relief: "Counsel ineffectively failed to object to pre-plea admissions and cooperation as pre-plea negotiations. Counsel's omission has prejudiced [Defendant] because [his] sentence is in excess of attributable drug amount and conduct." Doc. 117 at 5. In his motion, Defendant admitted that after a confidential informant made four separate purchases of crack cocaine from him, totaling 110 grams, he was arrested and Mirandized and then "cooperated with authorities, gave admissions incriminating himself...[and] assisted authorities in setting up a controlled buy of crack cocaine from Hall." Doc. 117, Memorandum at 5. He more specifically maintains that he informed counsel of the following:

> Deputy Ed Cook of Leon County Sheriff's Office informed [Defendant] of his <u>Miranda</u> rights after arrest, en route to Sheriff's Headquarters. Once at headquarters, Deputy...Cook informed [Defendant] that he was facing a life sentence in federal prison, if [he] went to trial on the charges [he] was arrested for. Deputy...Cook informed [Defendant] that he did not have to cooperate with the investigation, but that would only get [Defendant] life in prison. Deputy...Cook informed [Defendant] that if he fully cooperated with the investigation [he] would get a more lenient sentence.
>
> F.D.L.E. Officer Kitt-Wood informed [Defendant] that he was going to get a life sentence if he did not cooperate with the investigation. Agent Kitt-

> Wood stated that if [Defendant] admitted to all crimes that he had committed and make a controlled buy [he] would get no more than 30 years in prison. And if [Defendant] testified in the prosecution of others and the person or persons were convicted [he] would receive an even less sentence. D.E.A. Agent Lou Andris also participated in discussions.
>
> [Defendant] asked Officers whether or not they were being truthful about, "if he cooperated everything he did would help him." The officers responded that, "they could make no promises but if [Defendant] cooperated immediately without hesitation the officers were sure that the prosecutor would listen to them and be willing to be lenient in [Defendant's] case."
>
> [Defendant] believed the officers when they stated that, "if he refused to cooperate now/then they would inform the prosecutor that he was a hard ass when he had a chance to cooperate, and that the prosecutor would not work with him later if he pissed the officers off."
>
> It was because of the above circumstances [Defendant] made admissions incriminating himself, Willie Francis, and Robert Hall....[Defendant] informed counsel of the above facts, yet counsel ineffectively failed to argue that all admissions and pre-plea cooperation qualified as plea negotiations.

*Id*. at 7-9. Defendant then asserts that if counsel had informed the Court that Defendant believed there was "an understanding or a prediction" regarding his sentence, then the Court "would have been compelled to evaluate the admissibility of pre-plea admissions." *Id*. at 10-11. In Defendant's view, he was prejudiced by counsel's failure "because he received over 2.63 Kilograms of crack cocaine upon inadmissible pre-plea negotiation admissions, in cooperating in the investigation of others" and "because in his cooperation pre-plea he incriminated Willie Francis and informed authorities of his supplying Francis." *Id*. at 11.

There is no dispute that this motion is timely.

Approximately nine months after the Government responded to the original motion, Defendant filed an "Amended 2255 Motion," which, because the Government had already filed a response, the Court interpreted as a motion for leave to amend. Doc. 142. *See* Fed. R. Civ. P. 15(a) (after responsive pleading is filed, party may amend only with leave of court). In his proposed amendment, Defendant maintains that his counsel was ineffective as follows:

> [Defendant's] statements were inadmissible because they were given to officers in negotiation for less than a life sentence. [Defendant] was informed that his statements would be used to help him if he cooperated. That qualified as an inducement and drug amounts were inadmissible pursuant to the 5th Amendment. [Defendant] should be resentenced exclusive of pre-plea statements as to drug amounts. [Defendant] was rewarded a 5K1 for a drug buy and testimony. The drug buy was accomplished without reference to inadmissible drug amounts induced by police questioning and promise that cooperation would be conveyed to prosecutor. [Defendant's] testimony was also independent of statements. [Defendant] informed counsel of the circumstances surrounding his statements. However, pre-plea inadmissible statements were calculated into [Defendant's] sentence absent objection by counsel.

Doc. 142 at 5. This proposed amendment, which was filed on April 2, 2004, was filed after the one-year statute of limitations had expired.

**DISCUSSION**

The first question which must be addressed is whether the Court should consider the proposed amendment since it was filed well after the expiration of the one-year statute of limitations for seeking § 2255 relief. Because the proposed claim of ineffective assistance of counsel is facially untimely, it is barred unless it "relates back" to the original filing pursuant to Fed. R. Civ. P. 15(c). *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). The new claim "will relate back and be considered

timely if [it] 'arose out of the conduct, transaction, or occurrence' set forth in his original § 2255 motion." *Davenport*, 217 F.3d at 1344. For relation back to apply, the untimely claim must "have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceeding." *Id*. Rather, the untimely claim "must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'" *Id*. Rule 15(c) is not "so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts." *Pruitt v. United States*, 274 F.3d 1315, 1318 (11th Cir. 2001). Thus, while the rule "contemplates that parties may correct technical deficiencies or expand facts alleged in the original pleading, it does not permit an entirely different transaction to be alleged by amendment." *Pruitt*, 274 F.3d at 1318.

Having carefully considered the matter, the Court finds that consideration of the amendment is appropriate, as both the initial claim and the proposed claim involve counsel's alleged ineffectiveness for failing to act with regard to certain pre-plea admissions made by Defendant to law enforcement officers. Thus, the motion to amend is well taken, and the Court will consider the claim set forth in the motion to amend. Though the Court would usually require Defendant to file an amended § 2255 motion which incorporates all facts and issues to be decided, the Court will make an exception on this occasion and consider the facts as alleged in the original motion since Defendant did not include any new factual basis for the amended claim. With that said, the Court turns to a consideration of the amended ineffective assistance of counsel claim.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The Court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The Court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.*

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The Court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a

"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

In this case, counsel did not act ineffectively for failing to seek exclusion of various admissions Defendant made to law enforcement officers during the course of their investigation. These were not pre-plea negotiations pursuant to Fed. R. Crim. P. 11 or Fed. R. Evid. 410, as Defendant has made no allegation that the United States Attorney participated in any of these meetings. *See United States v. Jones*, 32 F.3d 1512, 1517 (11th Cir. 1994) (rule precluding admission of pre-plea negotiations does not apply to statements made to law enforcement officers).

Furthermore, Defendant was, by his own admission, read his *Miranda* rights, and he voluntarily chose to begin his cooperation immediately. Despite Defendant's present representation that one of the officers told him he would get less than thirty years if he testified against others, he clearly told the Court under oath a the plea hearing that no

promises were made to him by anyone regarding the sentence he might receive. The magistrate judge very carefully probed Defendant's understanding of the plea agreement, the impact of a possible motion for substantial assistance, and his agreement to the drug quantities in the Statement of Facts, and he plainly told the Court that he understood what he was doing and the ramifications of his actions.

The law is well established that a "guilty plea means something. It is not an invitation to a continuing litigation dialogue between a criminal defendant and the court." *Murray v. United States*, 145 F.3d 1249, 1254 (11th Cir. 1998). In fact,

> the representations of the defendant, his lawyer, and the prosecutor at...a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). In the end, Defendant received the benefit of the deal he was hoping for when he began his cooperation in that he was not sentenced to a mandatory life sentence--a mandatory sentence which was based solely on his criminal history. Counsel had no grounds under which to contest Defendant's incriminating statements to law enforcement. Defendant was plainly Mirandized and there is no evidence, other than what Defendant says in hindsight, that would have led a reasonable competent attorney to suspect that his client's desire to plead guilty was anything less than voluntary and knowing. Counsel cannot be ineffective for failing to lodge frivolous objections to matters which were part and parcel of the Plea and Cooperation Agreement and the supporting Statement of Facts. During the course of

the plea proceedings, Defendant had every opportunity to advise the Court that, based on representations made by law enforcement, he believed he would get less than thirty years imprisonment, to dispute the drug computation in the Statement of Facts, and to complain about his attorney's performance with regard to both of these issues. The Court was very careful in its handling of all of these issues during the plea dialogue, and Defendant has offered nothing to relieve him of his sworn statements to the Court or to impugn the representation he received.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED:**

That Defendant's motion to amend, Doc. 142, be **GRANTED;**

That Defendant's motion to vacate, set aside, or correct sentence, Doc. 117, along with the additional claim alleged in Doc. 142, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this **7th** day of June, 2005.

**s/ A. KORNBLUM**
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**